on behalf of the Avalanche, Keith Nemec, Mr. Terrence J. Madden, on behalf of the estate, Ms. Margaret M. Gorsh. Mr. Madden. Please, the court counsel. As we ask that this court vacate the judgment against my client, basically because it was entering a case that did not exist. It had not existed for years. It was a nobody under well-established law, the order permitting the appointment of the special administrator was a self-annulment, and everything that happened after basically December 3 of 2011. But you didn't bring your challenge until after the appointment was made, correct? And isn't that too late? No, actually, we made a motion to dismiss the complaint before the appointment, shortly before, on the basis that the whole thing was nullified. Hasn't the Supreme Court said something, in fact, that usually in these situations where they allow it to be retroactively applied, that you have to show some sort of prejudice or surprise? I don't believe so. The criminal case, I think, is the Ralph case. Well, maybe the Supreme Court didn't say it. Maybe I said it about 18 years ago. Well, there's a case that neither party, I think, has cited called Oatman's National Bank of Belleville v. Direct Lines, Incorporated, and it is a Supreme Court case that says essentially what Justice McClaren has just said. Well, I can address it because I'm not familiar with the case. It was from September of 1995, and while it has been distinguished not because it was wrongly decided but because it did not apply to a case that was being discussed, there were nine amendments in this case over a period of many years. And the Supreme Court ultimately said as long as there's no surprise, it says the cause of action shall not, well, no, they're citing a statute there, I'm sorry, but essentially they're citing a statute that says the cause of action shall not be barred unless you're surprised. If the challenge comes too late, if the case that is presently, in this case the ninth amendment, is basically the same as the first amendment or first complaint coming out of the transaction, it's okay. We're not really dealing with the issue of whether the relation back was appropriate or not. We're dealing with the threshold issue of whether this was a real case. And for that, I don't think surprise is a factor. What is a factor is was there compliance with the statute? Was there a special administrator? I'm sorry, I was just going to say, though, that the decedent's spouse was not a fictitional entity. I mean, she was a real person. Individually, yes. Right. But the complaint was filed in the name of Susan Minkowski, special administrator, not individually. So how does that change things? That changes things because that person did not exist. It was a fictional party. Well, the person existed, but the title did not exist. But she was not named in the case. Susan Minkowski, a special administrator, was named, as was David, her son. Now, when David dropped out of the case, as he did, the only thing left were wrongful death claims by this fictional party. Those were nullities and did not exist. And nothing that happened after that could change that. The court could not give leave to file an amendment complaint because all orders entered in cases that are nullities are themselves void. It wouldn't be nullity, though, if once the appointment was made, it related back. You made a motion to dismiss, and they made a motion to appoint, and that appointment came first before your motion to dismiss was heard, correct? No. No? No. We made a motion to dismiss. I think in Tepper Lane's leave was the motion to appoint a special administrator. Okay. They were both presented the same day. Ours was denied, and she was appointed special administrator. Okay. But the fact remains, she was appointed the special administrator. And while there may be best practices, and today in the law we talk about best practices, she should have been appointed a long time ago. Even though David wasn't the case, the fact remains, she was appointed. She was a real person. She was appointed. And, therefore, that related back to the initial complaint. Well, the problem is there was really nothing to relate back to since the initial complaint was a nullity. Furthermore, they never asked or obtained leave to file an amended complaint after the special administrator. And why should they have to? It didn't change anything. Well, what is being related back? She was named that way even though she may not have been, but nothing changed other than David was dismissed. The pivotal factor, I think, Your Honor, is that, first of all, the court had no jurisdiction to permit the appointment of a special administrator. Because everything at that point was a nullity. Well, no. There's jurisdiction because Susan was a real person. There was a person. So as long as there is a real person and Mickey Mouse wasn't bringing this action, who we all know is not a real person, Then the court has jurisdiction to entertain motions. No. I disagree with you because Susan Minkowski, special administrator, was a main party, and that entity was really no different than Mickey Mouse. It's a fictional entity. Is it a nullity because somebody who filed suit didn't have standing or, as you previously said, because they didn't exist? It's because they didn't exist. Stanley, I think, might present a different truth. But case law is clear, has been clear for a long time, that fictional entities cannot sue. Was this suit originally brought by her or was it brought by the son? It was initially brought. There were three forecounts of the original complaint, three by her as special administrator, one by David. Okay. So is David a nullity? No, David was not a nullity, but his claim was dismissed and was dropped out. When it was dismissed, it was never appealed. Thirty days thereafter, the only two claims remaining were the wrongful death claims by Susan, which were nullities. So, therefore, when the time to appeal David's dismissal of Count Forrest's filing, which happened 30 days later, the only things remaining were nullities, were wrongful death claims filed by somebody who did not exist. I just want to get this clear in my own mind. When you say nullity, this conjures up in my mind lack of personal jurisdiction, lack of subject matter jurisdiction, lack of existence, as you said. Is there any other basis for litigation being a nullity? Well, the main one is lack of subject matter jurisdiction. I listed that, and personal jurisdiction, and then your argument that this person didn't exist. And she did not exist in that capacity. Now, when you say she doesn't exist, will you at least concede the point that she has birth certificate? Of course. She doesn't exist in the sense that her status as a special administrator. She didn't exist as a special administrator. She did not exist? No one existed as a special administrator. That's a flaw. The case was brought to somebody who did not exist. And why is that a fatal flaw? Because that rendered the entire suit void according to the case decisions. They clearly held consistently that if you have an action like this filed by an entity that does not exist, it's just as though the case was never filed. Because it's void. And all ordinances in the case are void. It's just as though nothing ever happened. Because the court does not have subject matter jurisdiction over fictional entities. What authority do you think is most persuasive to support your position? I would subject the court's attention initially to the Ralph case. Also to the Bob Feff case. And the Santiago case. Three fairly recent decisions by the Supreme Court that have recognized, again, the fundamental concept that cases by or against fictional entities are nullities. In the L case, or the Ralph case, rather, the court made a point of rejecting the no harm, no foul argument that was made. Saying, the defense said, this doesn't hurt anybody. It's a hyper-technical defense. And the Supreme Court said, yes, it is a technical defense. But we can't change that. We cannot eviscerate the statute by not following it. So that's the same consideration we have here. What about your argument on the other evidentiary issues? Okay. The most important one, Your Honor, was the exclusion of arguments five and six. Signed documents by David and Walt. Which set forth the nature of the care that was going to be given to all companies. I'm going to distract your attention to one aspect of it. During my cross-examination of David, I asked him, did he say, he being Dr. Nevin, words to the effect to you that we do not treat any condition or disease at Total Health Institute? The answer, no. Did he say words to the effect that the Total Health Institute's program is not to take the place of standard medical treatment? Not that I recall. Did he tell you or your sisters that the clinic was not a hospital, clinic, or medical facility? And that if your dad needed medical care, you would have to contact your medical doctor for advice? No, those words were never spoken. But each of those points is specifically addressed in Exhibits 5 and 6. Each of them could be rebutted by the doctors. It was tremendously prejudicial of him for us not to demonstrate to the jury. This is the understanding everyone had when Walter went into the Total Health Institute. Were they being offered as a release? No. Why not? Because, first of all, releases are not valid in malpractice cases. Secondly, there's nothing in the documents. Well, this isn't a malpractice case. I know. What is it? Is it a negligence, a simple negligence case, a breach of a duty? Well, it's a breach of a duty by a chiropractor. By a chiropractor? Yes. Dr. Neumann is a chiropractor. Is the chiropractor a doctor? Yes, he has a chiropractic position. Okay. Does he medically treat people? Not medically. Pardon? Not medically. Didn't he do adjustments? He did. Lymphatic adjustments of Mr. Neumann? He did adjustments. Well, what is that called? What's called a chiropractic adjustment. That's not medical? Between the term medical. As does the department of professional regulation. When Mr. Mankowski's family looked for this alternative treatment or this alternative place, did your client identify himself as a doctor of chiropractic? Well, his website, which they visited, certainly did. And if you visit his facility, which they did, there's brochures identifying him as a chiropractic physician. Well, my point that I was getting to was the disclaimer or whatever it was that you were relating to was subject to the motion eliminating. I thought it suggested that he wasn't being treated. It said we will not provide any medical care or treatment. Okay. Did it say that he was going to provide chiropractic treatment? Let me get the document. These are attached at A3 and A4 for our appendix of the brief. What it says is Global Health Institute Fasting slash Detoxification Center and Program is a place for people to come to stay in order to enable their body to be in a restful environment to enhance the body's God-designed ability to heal. We do not treat any symptom, condition, or disease at the center with the program. Well, it says it's a non-medical, non-treatment facility. Yes. So what does non-treatment mean? That they're not getting any medical treatment. Well, if it's non-medical, it wouldn't make any difference. I don't understand why non-treatment is in there because if it's non-medical, what is the point of saying that it's not treatment or non-treatment? Well, Dr. Minkowski, Dr. Nema, I think would say in response to that, that the adjustments that he performed were not performed for chiropractic treatment but simply to clear the body's energy as part of this concept of total health. What is colonic hydrotherapy? Well... I know what it is, but why do they call it that? Because it's an enema. Why are they calling it colonic hydrotherapy if it is not some sort of a medical... They're suggesting it, they're not prescribing it, they're suggesting it be done, and in fact it was done, correct? Correct, yes. That's... and the doctor is suggesting it, that doesn't in any way make it medical. Well, you don't need a medical license to do colonic hydrotherapy. I know, but did he say... did Mr. Minkowski say, I think I'm going to do three colonic hydrotherapies a day? What do you think of that? No. No, he didn't. You've got hydrotherapy on schedule. Right. On his regular schedule. Okay. And I think three occasions. You mentioned that when they visited the facility, they saw the brochures that said we're not a medical facility. Didn't they also see brochures or testimonials from people who said, you know, when I stayed there, I... my cancer disappeared? Yes. And although... and they said because of the what? Why did their cancer disappear? Well, they assumed that's the care at Total Health Institute. Okay. And so didn't they in some ways also suggest that that could happen there with whatever type of care they were giving? And, in fact, I know that's the issue in this case, but isn't the jury decided that not only did they not provide that care, they provided care that may have hastened Mr. Mankowski's death? Well, I think the exhibit would make it clear that we are not providing any care. We're not guaranteeing a cure. We're not going to treat his medical conditions at all. So the next time I go to the chiropractor, or the chiropractor or one of the jurors goes to the chiropractor, and the doctor says, I'm going to do an adjustment, and then gives you a bill, you'd say, well, wait a minute, this is what I would pay a doctor. That wasn't a medical procedure. Would that make sense? Well, in dealing with this area, we have to be careful using the term medical because that relates to something done by an M.D., not a D.C. But they can prescribe medication, and that's what M.D.s do. Yes. And no necessary medication was prescribed here, as I can tell. No. But they can. They can. Okay. If this statement, what relevancy does this have? If it's a statement that it's non-medical, non-treatment facility, and the claim is malpractice chiropractic, then what does non-medical have to do with anything if, in fact, you claim that chiropractic medicine is not medical and you admit that he was treated via chiropractic adjustments? So to the extent that this document supposedly indicates a truism that's irrelevant, which relates to a possible medical breach that was not germane to the judgment or a non-treatment facility, which it obviously was based upon your own admission, why would this ñ why would the failure to allow this to be presented to the jury have any prejudicial effect on your client? Well, for example, Dr. Johnson voiced a number of criticisms, their expert, one of which being we didn't have enough medical doctors on staff. We didn't have doctors who saw him frequently enough. Now, I should have been permitted to cross-examine Dr. Johnson on the basis that, according to the document they signed, they had no reason to expect any medical doctors ever to see him at the clinic. Didn't this man supposedly, according to some witness, die from dehydration? There was a claim that he experienced kidney failure as a result, perhaps, of dehydration. He died about seven to ten days later from problems related to his kidneys. And the jury heard both sides of the experts, with your expert saying that he actually had some sort of a disorder in the first place, and the experts of the plaintiff saying that, no, it was dehydration and kidney failure and ultimately organ failure. Yes, true. And the jury decided that. They did. Any other questions? No, thank you. Thank you. Mr. Madden, you'll have an opportunity to make the bubble. Okay. I'll just rely upon our views on the other issues. Yes. Thank you. Good morning. Good morning. Margaret Forshaw. I represent the plaintiff's apologies in this case. I want to address just the nullity question very quickly because I think you have the gist of it. According to 740 ILCS 180-2-1, that provides for the appointment of a special administrator in a wrongful death action if it's the only asset of the estate. There is no time limit put into there. The cases, the Nagel case held well. It's ideal to have the appointment first. It is not fatal. In a case that this Justice McClare was involved in, the Jablonski case that was decided in 1997, the complaint was filed for wrongful death, and it named the parents in their individual capacity. There was an amendment more than two years after the accident to name them as special administrators. There was then a motion to dismiss saying that that was too late because it can't happen after the statute of limitations had run. This court decided no, that it related back to the original filing. All the cases that Mr. Bannon is relying on, Melanie, are cases involving the wrongful naming of defendants. And he also cites to the Vaughn case and says it distinguishes certain of our cases. In the Vaughn case, the defendant had died prior to the suit being filed, and an estate had been opened prior to the suit being filed. They named the defendant individually. They didn't name the estate until after the statute of limitations had allowed. You said they named the defendant individually. Did you mean the defendant or the plaintiff? The defendant. The defendant died. Oh, the defendant. The defendant died, and the estate is open for the defendant. Suits filed against him in his name, not in the estate. They amended to name the estate as the defendant, but it was more than two years after. It was more than, actually, they used a different standard because they look to Section 13-209 of the Code of Civil Procedures, and it has to do with when a defendant dies. You then have six months from the date of the estate being opened to substitute in the state. Well, in this case, it was ten months, and that's why the case was denied. But what's important is the Illinois Supreme Court, and this is case in 1989, noted that Section 2-616B, which is a relationship back code of the civil procedure, has been invoked in our appellate courts to commit changing the capacity of a party plaintiff after a statute has run, and they cited the Pavlov and Redmond case. And I quote, this is what they held. While we express no opinion where Section 2-6B was properly applied in those cases, we do not conclude that that provision was intended to govern amended pleadings to substitute defendants. So all of his cases that were wrongly named defendants have nothing to do with those cases. They are nothing to do with appointing special administrators for wrongful death actions for plaintiffs. All the cases that I found and cited to you where the appointment was made after the statute of limitation had run, they were all held to have related back to the date of the filing. And the most recent case, the Nagel versus, in my case, they held that no amendment was necessary. If the defendant thought there was necessary, they should have made a motion to strike on that basis. In our case, the defendant never moved to strike on the basis that it needed an amendment. So I think they have not preserved that issue for appeal. But even if they did, the one case that directly handles it said there is no amendment needed. So you're suggesting we follow the wrongful death statute rather than the case law suggested by counsel. But what is different about the cases that he cited and the defendants there? Because of the law as stated in Vaughan, the Supreme Court case, the law treats changing the capacity of a plaintiff different than changing the capacity of a defendant. If I follow Mr. Madden's logic correctly, he suggests that a personal representative has to exist prior to the time of filing of the complaint. And if that doesn't happen, then it's a nullity. Do you understand his argument to be that as well or not? Yes, and that's why I wrote in my brief that there's no way to do that. Because you have to get your case filed and get a judge before you can get your plaintiff appointed special administrator. At least in Lake County, there's no mechanism for you to do that before. So really, the beauty of this logic is that his client is immune from prosecution. Correct. And every single wrongful death action should be stricken as a nullity if you follow this logic. Well, but you didn't wait until you filed the case. There was a significant period of time. Correct. And so. That would have made the nullity even worse. Thank you. It would have. But let's talk about when would it be too late. Because the law is it's not too late. We have a real person first. Then the appointment comes and it's not too late. And then we get to relation back. When is it not too late? Well, I don't I don't think at least up to trial, because one of the things the Lopez case and they talked about that their their surprise or prejudice is not an issue. In Lopez's case, they said the appellate court cited Pavlov in both pleadings for the state. But it seemed it was named an interesting interested party when it was filed, although they weren't approved. And it's been clear from the start that plaintiff intended to bring this action as administrator of the state. That's why I will always relate back. And it's the appointment of the administrator, not an amended complaint that relates back. And we had no reason to file an amended complaint for two reasons. One, it would have been exactly the same. And two, they never raised that as a problem. So I think that the cases. You know, there is no time limit suggested in the cases. So as you know, you relate back as long as it's the same. Well, what do you say? Of course, I mean, you didn't. But what if you dug in your heels? He made the motion to dismiss. You never made the motion. And now you come back. Oh, I can answer that question. And in the Nagle case, they had a first case that they named the prosecutor at the time. But then they voluntarily dismissed the case. They refiled. They didn't ask for appointment of the petitioner again, taking the position that it was it was still good from the first time. The appellate court said, nope, it wasn't good for the first time. But you had a motion pending that was never ruled on. The appellate court ruled on it and said, okay, yeah, I'm appointing you and go back for trial. So it can be they made the motion that was never ruled on. But the appellate court itself ruled on it. So I think we're, you know, it can go pretty far. What about the evidentiary issues? Okay. And in regards to excluding the non-medical statement, this is a medical malpractice action. Dr. Nemec is licensed under the Medical Studies Act. He put himself out as a licensed chiropractor. He admitted he told them he was a licensed chiropractor. He admitted that he was treating them the entire time he was at the facility. He admitted that the entire time that he was at the facility, he had a duty to act under the standard of care of a reasonably well-qualified chiropractic physician. So this is barred by 225 ILCS 60-29. It says you can't have any kind of release in a malpractice action. Also, we're not saying that he failed to treat the cancer or failed to treat any other of his existing diseases. Our cause of action was based upon a breach of the standard of care by giving him supplements, colonics, chiropractic treatments, and a diet that were contraindicated to a man in his condition with severe liver disease, which resulted in dehydration, which resulted in renal failure, which resulted in multi-organ failure, and his death. Why did they not? Why did they admit him? Well, he said... Knowing what his condition was. On a form... What his diagnosis was, I assume. On the form, it said, Purpose 4, visit annual cancer. Dr. Nunnick testified he didn't want to know what he had. He didn't want to know what kind of cancer. He took no history. He said it doesn't matter. My treatment is the same if you have AIDS or if you have acne. I don't need to know that. I'm not treating that. I am unblocking your system so God can heal you. Well, it sounded more like they were thinning out his system so that God could heal him based upon... I'm sorry, I didn't hear your first part. It sounds more like they were cleaning out his system as opposed to blocking anything. Right. Well, they're doing unblocking. The problem with cleaning out the system is the man had very severe liver function that made him susceptible to dehydration, and everything they did was meant to clean you out. It was a detoxification fasting program. That was what it was meant to do, and that was extremely dangerous for a man in his condition. He now, I think, refers to himself as Mr. Nunnick. I don't think he has, you know, he's calling himself a doctor of chiropractic anymore on the website, but assuming that he was going to take this person in, did anybody testify the standard of care should have been to at least look at records concerning this person's situation? Yes. Both our chiropractic doctor did and their chiropractic doctor did. And what did their say? Their chiropractic doctor admitted it was a standard of care for them not to take a detailed history. So they wouldn't necessarily have to look at what the records from the hospital was, but it should have taken a history. Correct. Is there any responsibility to compare the history with the records, or is it they could just operate on the history? Well, they probably knew the history. He also had lab work drawn. The lab work on the liver panel showed that he was not good, his function in the liver was not good. But you put that together with that he had stage four stomach cancer, metastasized to the liver, then you should know that he's very susceptible to dehydration. I think his judgment was around $2 million, is that right? $2.5 million-odd. And how many more months did he have to live if he didn't die from it? Our chiropractor, his internist said without treatment it was six to eight months. Our oncologist said without treatment it was, I believe, six months, and the median survival rate at five years was 11 months. But it could be more. It could be up to one or two years after that. It depends. And he said everybody's heard of people that have been given a diagnosis and have lived longer. I think the point here, however much time it was, six months or it was two years, this would have been an extremely important time in his family's life. They were planning trips. They were looking at buying a house. They really wanted this time to get in as much as they could with him, say everything they had to to each other. And the point is he, when he walked into the total health center, he was walking, talking, coherent. When he came back, he was basically incoherent. They never even, they put him on dialysis. None of them could have any kind of meaningful conversations with him. So they lost that time, whether it's six months or two years. And I think we put on a lot of very substantial evidence that this was an extremely close family and that this was a very big loss for them. They all testified that that period of time that they would have had left with him would have been the most important time of their lives. So I think that that case distinguishes the Bart case, which counsel cited. And Bart, the original verdict was $2.2 million for a 63-year-old man killed in an explosion. The judge reduced it to a million. The appellate court said there's really nothing even in the record to support that. So they remanded it and said, this will give you the opportunity to put in the evidence you need on loss of society. I think in our case it's much different because we have an abundance of testimony of loss of society. And, of course, the case law says you can't really compare one verdict to another. We had the jury was in the best position to decide the verdict. They had a motion for remediator, Judge Mullen, who saw the same evidence, saw the same witnesses, and decided, no, there shouldn't be a remediator. And I think based on those facts and the evidence we put on, the judgment should be affirmed. Didn't she actually say it didn't shock the conscience? Yes. That was one of her statements, and that's from cases that you have cited. Yes. Did she explain that in any way? She just said that based on my argument, which I have gone through and listed the same thing on your brief, what all the testimony was from the wife and the children. Any other questions? No. Thank you. Thank you. Your Honor, regarding the point that there's no time limit for the appointment of a special administrator under the Wrongful Death Act, that is true, but there is a time limit for filing a wrongful death case of two years. So if the special administrator was appointed five years after death. Did you hear my logic about if I understood your argument correctly, the widow as a person representative or representative of the state administrator didn't exist, then any lawsuit that was filed by anybody other than this entity that didn't exist would have been a nullity. That's true. And, therefore, one has to be appointed an administrator before a lawsuit is ever filed. That is what the Wrongful Death Act requires. It says only a representative has standing to bring a suit. Then why has the Supreme Court said what you said, which is since this person wasn't appointed, it's a nullity? That seems to be inconsistent with the concept of retroactive application of the appointment of someone who supposedly didn't exist previously. Well, the Supreme Court has never actually addressed this precise issue, standing alone. In all the cases where the relation back was permitted, our cases were either an amendment complaint was filed in the underlying suit, there was some other person in existence from the get-go to give the court jurisdiction, factors like that. But what would be the purpose of filing an amended lawsuit if it's going to be identical, absolutely positively identical in everything except that which you agree on, and that's a dismissal of data? Because if you operate under the belief that the appointment of the administrator relates back somehow, what is it that it relates back to? If the initial case was a nullity, which it was here, what is there to relate back to? Nothing. That's why in most all of these cases there was an amended complaint filed after the appointment. I think that maybe I'm wrong, but I was under the impression that in some of these cases somebody is injured. They haven't died yet. True. And then they die later on, and when they die later on, then they needed a representative. True. And so your argument, how should I put it? It's like all Texans are Americans, but not all Americans are Texans. And the fact that there had to be an amended complaint, at least in situations where the person wasn't deceased at the time of the filing of the suit, I think would require an amended complaint because I think when the original complaint was filed, the person wasn't deceased, and therefore you wouldn't need an administrator. Correct? Correct. So if they filed the wrongful death suit, would they have had to file the wrongful death suit within two years of the injury or within two years of the death, or what? Within two years of death. That's what the wrongful death law is. And here they filed it within two years. Was there ever a case where they filed it within two years of the injury, then the person died, and they filed the motion more than two years after the death, but it related back anyway? That would have been the Ralph case involving a defendant. Pardon? I think the Ralph case addresses that, but the deceased party is a defendant. Well, isn't it significantly different if you are suing a defendant who is alive and well and then going after his estate who is a different entity? Those are different entities. Yeah. This Susan was always real. She was then appointed the special administrator. Now, if Lake County has a procedure and that's what's been represented, and of course this is where this case was tried, that you have to file your lawsuit and then get your appointment, how can it be a nullity if that's the practice and procedure in that county? Well, if that is the practice and procedure, it violates the Wrongful Death Act. Lake County cannot change the terms of the Wrongful Death Act by saying that somebody other than the special administrator can file a suit. Well, why would any judge appoint a special administrator beforehand before a lawsuit is filed? Because that's what the statute requires. That's what the Wrongful Death Act says. It has to be filed by a representative. And so if there's a practice in Lake County, that violates the statute. So we accept your principle. We open up all Lake County cases where this might have happened. I'm not addressing that because that's beyond the scope of this case. You want to represent anyone, correct? That's right. The statute says what it says. That was fast. You sure that was the right amount of time? It seemed like it flew. It did. It did, okay. Well, like the mother frog asked her froglets, why are you so late for lunch? And they replied, time's fun when you're having flies. So we'll take this case under advisement. And we have a short recess. Thank you.